UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANCIS FULLER, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    PRISONER CASE |
| | :    No. 3:09cv635 (MRK) |
| THERESA LANTZ, PATRICIA | : |
| OTTOLINI, EDWARD PESANTI, | : |
| ASLAM KADRI | : |
| | : |
| Defendants. | : |

**RULING AND ORDER**

Pending before the Court is Plaintiff Jancis Fuller's Motion for Reconsideration [doc. # 81]. In her motion, Ms. Fuller – who is currently incarcerated – asks the Court to excuse her failure to comply with the Court's Order [doc. # 45] directing her to disclose a new medical expert and file a new expert report no later than September 9, 2010. The Court construes the motion as one seeking reconsideration of the Court's October 25, 2010 Order [doc. # 79] denying her Motion for Physical Examination [doc. # 64]. For the reasons set forth below, the Court GRANTS the motion insofar as it is willing to reconsider its earlier decision. However, the Court ultimately adheres to its prior Order denying Ms. Fuller's request for a physical examination in all respects.

Rule 60(b) of the *Federal Rules of Civil Procedure* limits the circumstances under which this Court may reconsider a final judgment, order, or proceeding. *See Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55-56 (2d Cir. 2004). However, the Court's power to "modify an interlocutory judgment or order at any time prior to final judgment . . . is not limited to the provisions of Rule 60(b)." 11 Charles Alan Wright, Arthur R. Miller & Mary Kaye Kane, *Federal Practice and Procedure* § 2852, at 233 (2d ed. 1995); *see* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision,

however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). The Order that Ms. Fuller asks the Court to reconsider was an interlocutory order, not a final order.

Although the Order that Ms. Fuller asks the Court to reconsider was an interlocutory order, Ms. Fuller filed an appeal from that Order with the Second Circuit two weeks after she filed the pending Motion for Reconsideration. Ms. Fuller did not seek permission from this Court under 28 U.S.C. § 1292(b) to file an interlocutory appeal from that Order. Because this Court never approved Ms. Fuller's improper appeal and has never ordered a stay of the proceedings in this case, and because the Second Circuit has not ordered a stay of the proceedings in this case, the Court retains jurisdiction to resolve issue that continue to arise in this ongoing case, including the pending motion for reconsideration. *See id.* ("[A]pplication for an appeal hereunder shall not stay proceedings in this district court unless the district court or the Court of Appeals or a judge thereof shall so order.").

Ms. Fuller alleges in this case that she contracted tuberculosis while incarcerated, and that she now has active disseminated tuberculosis that is going untreated. According to Defendants, however, Ms. Fuller does not currently have active tuberculosis and may never develop it. The Order that Ms. Fuller asks the Court to reconsider related to Ms. Fuller's search for a medical expert to corroborate her self-diagnosis. The Court originally set December 20, 2009 as the deadline for Ms. Fuller to disclose her medical expert and February 10, 2010 as the deadline for the expert to examine Ms. Fuller, review her medical records, and disclose his expert report. *See* Case Management Order [doc. # 36]. Those were the dates that Ms. Fuller herself proposed to the Court. *See* Proposed Deadlines Re: Experts [doc. # 35].

Ms. Fuller, through her counsel Attorney Leo E. Ahern, originally designated Dr. Clifford Stirba as her medical expert. She also disclosed a report by Dr. Stirba to Defendants, although apparently not by the February 10, 2010 deadline. Then, on May 13, 2010, the parties filed an unusual Joint Status Report [doc. # 40]. The parties reported that Dr. Stirba had concluded that, in his opinion, Ms. Fuller probably did not have active tuberculosis and that in his view, her treatment met the standard of care for latent tuberculosis. The parties also reported that Ms. Fuller had "fired" Dr. Stirba and that she planned to go forward *pro se*, with Attorney Ahern serving only as her "stand-by" legal advisor. Ms. Fuller believed that the medical records Dr. Stirba relied on in preparing his report were inaccurate and that Dr. Stirba did not perform sufficient tests himself to reach a reliable conclusion about her condition. In short, Ms. Fuller believed that her expert was wrong.

When Ms. Fuller requested additional time to find a new expert to corroborate her self-diagnosis, Defendants opposed that request. Defendants did so for good reason. When plaintiffs select and designate their expert witnesses, they generally do so at the risk that their designated experts *might not ultimately agree with them*. If a designated expert submits a report that is unfavorable toward the claims of the party who hired her, it would make little sense to allow that party to start all over and look for a new expert who might reach more favorable conclusions.

In this case, however, despite Defendants' objections to Ms. Fuller's request for permission to locate a new expert, the Court decided to give Ms. Fuller one more chance to find an expert who could corroborate her self-diagnosis of active tuberculosis. The Court decided to do so because of Ms. Fuller's allegation that Dr. Stirba's report merely parroted what he read in prison medical records, and that Dr. Stirba had not actually examined Ms. Fuller before forming his opinion. The Court also decided to do so because of Ms. Fuller's dissatisfaction with Attorney Ahern and his

3

selection of Dr. Stirba.

On June 9, 2010, the Court held a telephonic conference with counsel for both parties and with Ms. Fuller to explain its decision. During the conference, Ms. Fuller explained to the Court that in her view, Dr. Stirba had breached his agreement to personally examine her before filing his report. The Court asked Ms. Fuller if she had located another expert to replace Dr. Stirba, and Ms. Fuller admitted that she had not yet been able to locate a replacement expert. The Court informed Ms. Fuller that it was willing to give her some additional time to find an expert, but that it would not put the case on hold forever until she could find an expert who agreed with her. Ms. Fuller asked the Court for an additional 90 days to secure an expert and file an expert report. The Court agreed to Ms. Fuller's request, and explained to Ms. Fuller that the new deadline – September 9, 2010 – was not just a deadline to locate a new expert, but also a deadline to have the new expert examine her and submit a report. The Court emphasized that if Ms. Fuller did not actually have a new expert by September 9, 2010, the Court would not grant her any more time to find one. However, the Court agreed that if she had an expert by September 9, 2010 but the expert needed more time to complete his or her report, the Court might be willing to entertain a motion for extension of time.

Shortly after the telephonic conference, the Court entered an electronic Order. The Order read as follows:

> As discussed with the parties during an on-the-record telephonic conference on June 9, 2010, Plaintiff Jancis Fuller has until September 9, 2010 to find and disclose a new expert, and file an expert report. If Ms. Fuller has not located an expert by that date, she will not be given any more time to do so. However, if Ms. Fuller has retained an expert by that date, but the expert needs more time to complete his or her report, the Court will entertain a motion for extension of time. Any such motion must be accompanied by a description of the work completed to date, the additional work to be done before a report is filed, and an explanation of why additional time is necessary. The Court will also consider any motion for physical examination filed by Ms. Fuller. However, any such motion must be accompanied by an affidavit from her expert explaining the scope of the physical exam and why such an exam is

4

necessary for the claims in this case.

Order [doc. # 45]. Ms. Fuller has filed a number of motions arguing that the Clerk of the Court neglected to mail Ms. Fuller a copy of the Order, and that Attorney Ahern never provided her with a copy of the Order, either. Ms. Fuller believes that because she did not receive a copy of that Order, the Court should excuse her failure to fully comply with the Order.

On September 8, 2010 – the day before the deadline – Ms. Fuller filed a Motion for Physical Examination. In the motion, she asked the Court to order her to be transported to the offices of Dr. Gavin McLeod in Stamford, Connecticut – nearly 80 miles away from the prison where she is incarcerated – for a physical examination. The motion was accompanied by a letter from Dr. McLeod in which he represented that he had reviewed Ms. Fuller's medical records, and that he "believe[d] that an independent medical exam would be in order to determine whether she has active disseminated tuberculosis versus latent tuberculosis infection." Motion for Physical Examination [doc. # 64] at 2. This Court denied Ms. Fuller's motion in the Ruling and Order that Ms. Fuller now asks the Court to reconsider.

Ms. Fuller's central argument in support of her Motion for Reconsideration is that her failure to comply with the Court's written Order regarding the deadline for filing a new expert report was the result of excusable neglect. She suggests that her failure to comply was excusable because she never received the written Order. As far is the Court is aware, the Clerk has been diligent about providing Ms. Fuller with copies of the Court's orders in this case. Furthermore, the Court understands that Attorney Ahern – who automatically receives copies of all of the Court's orders in this case via email – has been providing Ms. Fuller with copies of the Court's orders as well. But even if Ms. Fuller did not receive the Order, the Court is not persuaded that whether she received a copy of the written Order is relevant to whether she should be allowed more time to file an expert

5

report at this late date. As should be apparent from the above summary of the telephonic conference, the Court gave Ms. Fuller oral notice during the conference that it would not consider any further extensions of time unless Ms. Fuller actually retained an expert who had already begun preparing an expert report by September 9, 2010.

Although the Court is willing to reconsider its decision to deny Ms. Fuller's Motion for Physical Examination, the Court stands by that decision. Whether or not Ms. Fuller received a copy of the written Order setting the deadline and explaining the conditions under which the Court would consider a motion for additional time to file an expert report, Ms. Fuller had oral notice about both the deadline and the conditions. Yet she waited until *the day before* the deadline to file a motion in which she merely identified yet another *possible* expert who *might* agree with her self-diagnosis – but who also *might not* agree with her self-diagnosis. Notably, neither Mrs. Fuller's motion nor the accompanying letter represented that Ms. Fuller had agreed to accept Dr. McLeod as her expert, nor that she had disclosed Dr. McLeod to Defendants as her retained expert. Nor did either represent that Dr. McLeod had begun preparing a report, nor that he had even met Ms. Fuller in person. Nor did either represent that Dr. McLeod agreed with Ms. Fuller's self-diagnosis – the only thing the motion and the accompanying letter represented was that Dr. McLeod believed a physical exam "would be in order." Motion for Physical Examination [doc. # 64] at 2.

In the Court's view, Ms. Fuller had notice of the deadline and conditions set by the Court, and her actions did not comply with either the deadline or the conditions. After Ms. Fuller "fired" her first expert for reaching a conclusion she did not agree with, the Court worried – and continues to worry – that granting Ms. Fuller's motion could very well lead to yet another round of expert-witness shopping by Ms. Fuller. Ms. Fuller has given the Court no reason to believe that her new *possible* expert witness will in fact corroborate her self-diagnosis. She merely speculates that Dr.

6

McLeod, who has never examined her and may never have even met her, *could* potentially agree with her. The Court therefore stands by its prior decision denying Ms. Fuller's request for a physical examination by Dr. McLeod.

                                IT IS SO ORDERED.

                              /s/        Mark R. Kravitz
                                        United States District Judge

**Dated at New Haven, Connecticut: December 17, 2010.**