UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JANCIS FULLER,                          :
            Plaintiff,                  :
                                        :
      v.                                :      Case No. 3:09cv635 (MRK)
                                        :
THERESA LANTZ, et al.,                  :
            Defendants.                 :

## RULING AND ORDER

*Pro se* Plaintiff Jancis Fuller brings a claim under 42 U.S.C. § 1983, alleging deliberate indifference to her serious medical needs, in violation of the Eighth Amendment. Ms. Fuller, a prisoner, contends that Defendants have refused to treat her tuberculosis. Defendants—former Commissioner of Correction Theresa Lantz, Nurse Patricia Ottolini, and Doctors Edward Pesanti, Aslam Kadri, and S. Gupta—have filed a Motion for Summary Judgment [doc. # 179]. Also pending before the Court are Ms. Fuller's Motion for Temporary Restraining Order and Preliminary Injunction [doc. # 206] and Motion for Disqualification of Judicial Authority [doc. # 210]. For the reasons that follow, Defendants' motion is GRANTED and Ms. Fuller's motions are DENIED.

## I.

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is therefore entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The moving party may satisfy this burden "by showing—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal

quotation marks and citations omitted). Once the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 255, and present such evidence as would allow a jury to find in its favor in order to defeat the motion for summary judgment. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). Merely verifying the allegations of the complaint in an affidavit, however, is insufficient to oppose a motion for summary judgment. *See Zigmund v. Foster*, 106 F. Supp. 2d 352, 356 (D. Conn. 2000) (citing cases).

When reviewing the record, the Court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought. *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 218 (2d Cir 2004). If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate. *Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## II.

Ms. Fuller is incarcerated at York Correctional Institution in Niantic, Connecticut. In 1997, she was convicted of two counts of attempt to commit assault in the first degree and one count of carrying a pistol without a permit after she fired gunshots into the home of a state judge while he and his family were asleep in the home. She is serving a thirty-year sentence.

On March 24, 2006, Ms. Fuller was given a purified protein derivative test, commonly known as a PPD test. Ms. Fuller's PPD results were positive, indicating that Ms. Fuller had been exposed to tuberculosis. However, medical professionals did not note any symptoms of active

tuberculosis at that time, and a follow-up chest x-ray showed that Ms. Fuller had clear, uninfected lungs.

Isoniazid ("INH") medication is given to persons with positive PPD tests but no active symptoms to decrease the already low risk that the person will develop an active tuberculosis infection in the future. As with many medications, INH comes with the risk of side effects.  INH may cause serious liver damage and, in some cases, even death. Because INH can damage the liver, Dr. Pesanti performed a liver functioning test on Ms. Fuller in April 2006 before prescribing the drug.  When the liver functioning test results were normal, Dr. Pesanti prescribed for Ms. Fuller a treatment regimen of 900mg of INH bi-weekly.  During her appointments with Dr. Pesanti, Ms. Fuller claimed that she was experiencing tuberculosis symptoms, but Dr. Pesanti disagreed, assuring Ms. Fuller that she did not exhibit symptoms of an active tuberculosis infection.

After Ms. Fuller began taking INH, she complained that she was experiencing nausea and vomiting, known side effects of the drug.  In response, on May 11, 2006, Dr. Kadri decreased the dosage by more than half, from 900mg bi-weekly to 210mg weekly. But the side effects continued and, in July 2006, Dr. Kadri ordered another liver function test. When the results from the new test showed abnormal liver functioning, Dr. Kadri promptly discontinued the INH treatment.  Drs. Pesanti and Blanchette concurred in the determination that discontinuing Ms. Fuller's INH prescription was medically necessary.  After the INH treatment was discontinued, a liver function test performed on August 24, 2006 indicated that Ms. Fuller's liver functioning had returned to normal.

Ms. Fuller believed—and continues to assert—that the elevated test results in July were falsified to allow Defendants to discontinue the INH treatment. Ms. Fuller wrote letters to the

Commissioner of the Department of Public Health and Governor Jodi Rell complaining about the cessation of INH treatment.  The letters were referred to Commissioner Lantz and then to Nurse Ottolini for response.  Nurse Ottolini responded to the letters in October 2007 and recommended that Ms. Fuller meet with an infectious disease specialist to discuss how to manage her inactive tuberculosis.  Ms. Fuller refused to meet with the infectious disease specialist because she had not spoken with her attorney.

On March 23, 2011, Dr. McLeod, a private infectious disease specialist and Ms. Fuller's medical expert, performed a medical history and examination of Ms. Fuller at York Correctional Institution.  He obtained blood and urine samples which he personally delivered to the Stamford Hospital Laboratory for testing.  During the hour-long examination, Ms. Fuller did not cough. Dr. McLeod noted that Ms. Fuller described various skin lesions on her face, extremities, and torso that continue to develop and resolve.  He observed a 2-4 cm patch of macules on her left hand and a .8 cm lesion on her chin.  Dr. McLeod opined that the most common site of tuberculosis is in the lungs, but Ms. Fuller's chest x-rays were reported as normal.  Dr. McLeod chose not to review the x-rays himself.  Dr. McLeod also noted that all of the blood and urine tests were normal except for thyroid studies.  Finding no evidence of tuberculosis in Ms. Fuller's blood or urine, Dr. McLeod did not diagnose Ms. Fuller as suffering from cutaneous tuberculosis.  He merely noted that Ms. Fuller was concerned that she suffered from cutaneous tuberculosis and that her concern could be ruled out by a culture of the lesions.

However, when prison medical staff attempted in October 2011 to perform a culture Ms. Fuller's lesions, in line with Dr. McLeod's suggestion, the staff found that Ms. Fuller had no lesions to test.  Moreover, x-rays taken in June 2011 revealed "no active or prior, healed

tuberculosis." Ms. Fuller disagrees with this diagnosis and believes that the medical reports have been falsified. To date, no doctor has diagnosed Ms. Fuller as suffering from active tuberculosis.

### III.

To establish an Eighth Amendment violation for denial of medical care, Ms. Fuller must demonstrate that Defendants were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). The test for deliberate indifference includes both an objective and a subjective component: the physical condition of the plaintiff must be sufficiently serious, and the failure to render proper care must result from "a sufficiently culpable state of mind." *Hathaway*, 37 F.3d at 66.

### A.

Although there is "no settled, precise metric" for what constitutes a serious medical need under the objective prong of the *Estelle* test, the Second Circuit has articulated three non-exhaustive factors that courts should consider: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (quotation marks omitted); *see also Chavis v. VonHagn*, No. 02-cv-0119 (Sr), 2009 WL 236060, at *43 (W.D.N.Y. Jan. 30, 2009) (cataloguing "types of conditions which have been held to meet the constitutional standard of serious medical need").

### 1.

Active tuberculosis is a serious medical need. *See Brown v. Cnty. of Atl.*, No. 07-824(NHL)(AMD), 2010 WL 2518540, at *6 (D.N.J. June 11, 2010) (acknowledging that active

tuberculosis is a serious medical need); *Brown v. White,* No. 06-cv-0196 (MWL), 2007 WL 1309544, at *5 (E.D. Wash. May 4, 2007) (same).  Insofar as Ms. Fuller seeks damages from Defendants for their deliberate indifference to her active tuberculosis symptoms, the Court must determine whether Ms. Fuller can demonstrate a genuine dispute over whether she suffered from active tuberculosis.

In 2006, Ms. Fuller had a positive PPD test.  This means only that she was exposed to the tuberculosis bacteria.  *See, e.g.*, *Odom v. Sielaff*, No. CV-920571 (DGT), 1995 WL 625786, at *1 (E.D.N.Y. Oct. 12, 1995) (noting that a positive PPD test indicates that a person has been exposed to the tuberculosis bacteria, not that she has active tuberculosis).  Chest x-rays performed since then reveal no evidence of tuberculosis.  Ms. Fuller disagrees with this assessment but has presented no evidence, other than her lay opinion, that the x-ray readings were inaccurate.

Defendants first filed their Motion for Summary Judgment [doc. # 29] in September 2009.  The motion was denied twice to enable Ms. Fuller to obtain a medical expert to support her claim that she suffers from active tuberculosis.  Ms. Fuller located an expert and Defendants made arrangements for the expert to examine Ms. Fuller at the prison and take blood and urine samples for testing.  *See* Notice [doc. # 105]; Order [doc. # 128].  The expert's report does not support Ms. Fuller's conclusion that she suffers from active tuberculosis.  The report indicates only that Ms. Fuller *believes* she suffers from cutaneous tuberculosis and suggests that a dermatologist could perform a skin biopsy to rule out active tuberculosis.  Contrary to Ms. Fuller's interpretation, the expert did not diagnose active tuberculosis.  Although the Court approved Defendants' arrangement to permit Ms. Fuller to have a dermatologist come to the

correctional facility to examine her, *see* Ruling and Order [doc. # 153], Ms. Fuller did not avail herself of this opportunity.

Ms. Fuller disagrees with the medical findings that she did not exhibit symptoms of active tuberculosis in March 2006 and that the results of the March 2006 chest x-ray showed no signs of infection. She provides only her own affidavit and that of a friend in support of her position that she exhibited symptoms of active tuberculosis. As neither Ms. Fuller nor her friend are medical professionals, they are not competent to render a diagnosis. Ms. Fuller fails to present any admissible evidence that she suffered from active tuberculosis. In support of their motion for summary judgment, Defendants have submitted medical records containing no reference to active tuberculosis as well as affidavits from doctors stating that Ms. Fuller did not exhibit any symptoms of active tuberculosis. In his affidavit, Dr. Buchanan noted that if skin lesions developed and resolved without treatment, they were not evidence of cutaneous tuberculosis. Buchanan Aff. [doc. # 179], Ex. B, ¶ 8.

Ms. Fuller has failed to provide admissible evidence that she had active tuberculosis. Because no reasonable juror could conclude that Ms. Fuller suffered from active tuberculosis on the basis of the record before the Court, summary judgment for Defendants is appropriate.

## 2.

Insofar as Ms. Fuller's deliberate-indifference claim rests on Defendants' purported failure to treat her latent tuberculosis, her claim fails because Ms. Fuller has not demonstrated that her latent tuberculosis constitutes a serious medical need.

The Tenth Circuit has held that the "Eighth Amendment does not sweep so broadly as to include possible latent harms to health." *Clemmons v. Bohannon*, 956 F.2d 1523, 1527 (10th Cir. 1992). The Court sees no reason why latent tuberculosis should prove an exception. *See McRoy*

*v. Sheahan,* 188 F. App'x 523, 525 (7th Cir. 2006) (noting that latent tuberculosis is not infectious); *Forbes v. Edgar*, 112 F.3d 262, 265 (7th Cir. 1997) ("A person with dormant [tuberculosis] is not infectious and has no symptoms of the disease."); *Shaver v. CFG Healthcare*, No. 09-CV-3280 (NLH)(JS), 2011 WL 3882287, at *4 (D.N.J. Sept. 2, 2011) (noting that if no medical treatment were necessary for latent tuberculosis, then the defendant "could not have acted with deliberate indifference by depriving [the plaintiff] of medical treatment for a serious medical need"). The Court need not make a categorical determination about the seriousness of latent tuberculosis, however. At the very least, a plaintiff bringing a claim of deliberate indifference based on an alleged failure to treat latent tuberculosis must produce evidence establishing why, in her particular case, latent tuberculosis presents a serious medical need.

Ms. Fuller has not provided sufficient evidence of the seriousness of her latent tuberculosis. By definition, latent tuberculosis cannot "significantly affect[] daily activities," *Brock*, 315 F.3d at 162, because it has no symptoms. *See Forbes*, 112 F.3d at 265. Similarly, there can be no "chronic and substantial pain" without symptoms. *Brock*, 315 F.3d at 162. The Court would have faced a more difficult question had Ms. Fuller presented evidence showing not only that she has latent tuberculosis but also that there is a significant risk that her latent infection will develop into active tuberculosis. Without this showing and in light of contrary evidence indicating that Ms. Fuller faced a low risk of an active tuberculosis infection developing, *see, e.g.*, Blanchette Aff. [doc. # 29], Ex. D, ¶ 11, the Court finds that Ms. Fuller's purported latent tuberculosis was not a serious medical need sufficient to sustain a deliberate-indifference claim under the Eighth Amendment.

## B.

Even if Ms. Fuller were able to demonstrate a material dispute about the seriousness of her medical affliction, her claim fails because she cannot establish that Defendants acted with deliberate indifference. An official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety . . . ." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).   Mere negligence or medical malpractice will not support a § 1983 claim for deliberate indifference to a serious medical need. *See Smith*, 316 F.3d at 184; *Torres v. Trombly*, 421 F. Supp. 2d 527, 531 (D. Conn. 2006). Here, the uncontroverted evidence demonstrates that Ms. Fuller's INH treatment was discontinued not because Defendants consciously disregarded the risk of untreated tuberculosis, but because, in Defendants' medical judgment, the INH treatment posed countervailing risks to Ms. Fuller's health—risks that outweighed the potential benefits of INH. Given that Ms. Fuller exhibited abnormal liver functioning after she began to taking the drug, Defendants' decision to discontinue INH treatment seems, if anything, prudent. At worst, discontinuing Ms. Fuller's INH prescription might be characterized as negligent, but "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

The Court finds the reasoning in *Palladino v. Wackenhut Corrections*, No. 97-cv-2401, 1998 WL 855489 (E.D. Pa. Dec. 10, 1998), to be persuasive. In *Pallandino*, a prisoner brought a § 1983 claim, similar to Ms. Fuller's, alleging that prison officials did not treat his inactive tuberculosis. *Id.* at *1. The District Court determined that the plaintiff failed to demonstrate "the deliberate indifference essential to his Eighth Amendment claim," because the "uncontroverted evidence reveals that the decision not to treat [the plaintiff's] inactive tuberculosis was a medical judgment." *Id.* at *3.  Here, as in *Palladino*, the record before the Court clearly demonstrates that

Defendants were not deliberately indifferent but rather made the considered medical decision to discontinue the INH treatment because the risks of worsening side effects outweighed the already low risk that Ms. Fuller would develop an active tuberculosis infection.

Thus, Ms. Fuller's claim founders on both the objective and subjective prongs of the deliberate indifference standard. *See Hathaway*, 37 F.3d at 66.  Ms. Fuller has not established that there is a genuine issue of fact about whether she has active tuberculosis, and her claim regarding latent tuberculosis fails because it is not sufficiently serious to implicate the Eighth Amendment. Moreover, Defendants were not deliberately indifferent toward Ms. Fuller's condition; rather, they discontinued INH to protect her wellbeing. Defendants' motion for summary judgment is thus GRANTED.[1]

## IV.

Having granted Defendants' Motion for Summary Judgment [doc. # 179], the Court turns to Ms. Fuller's remaining motions.

## A.

On March 9, 2012, Ms. Fuller filed a Motion for Temporary Restraining Order and Preliminary Injunction [doc. # 206], requesting that the Court issue an injunction prohibiting Defendants from subjecting Ms. Fuller to medical procedures absent a Court order and requiring Defendants to transport Ms. Fuller to Dr. McLeod's office for further tuberculosis testing and treatment.

---

[1] Because the Court grants Defendants' motion for summary judgment on the grounds that Ms. Fuller has not established a serious medical need and that Ms. Fuller's doctors were not deliberately indifferent in the care they provided, the Court need not address the arguments concerning the supervisory involvement of Commissioner Lantz and Nurse Ottolini.

To succeed on her motion for a preliminary injunction, Ms. Fuller must show that she will suffer irreparable harm absent an injunction, and, in addition, "either (1) that [she] is likely to succeed on the merits of the action, or (2) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, provided that the balance of hardships tips decidedly in favor of the moving party." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010). As the Court has granted summary judgment for Defendants, Ms. Fuller's motion for injunctive relief—raising substantially similar claims of untreated tuberculosis—is unlikely to succeed on the merits. Ms. Fuller's motion for injunctive relief is therefore DENIED.

## B.

The Court construes Ms. Fuller's Motion for Disqualification of Judicial Authority [doc. # 210] as a motion for recusal pursuant to 28 U.S.C. § 455. Ms. Fuller seeks recusal of the undersigned because he received free medical care from the University of Connecticut Health Center, which employs Defendants Pesanti and Kadri. The factual predicate to Ms. Fuller's recusal motion, however, is inaccurate: The undersigned has not and does not receive free medical care from the University of Connecticut Health Center. Without basis in fact, Ms. Fuller's motion must be denied.

A judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). To determine if recusal is required, the Court must ask whether "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal . . . ." *United States v. Amico*, 486 F.3d 764, 775 (2d Cir. 2007). The Court is confident that a disinterested observer,

fully informed of the fact that the undersigned does not receive medical care from the University of Connecticut Health Center, would not harbor any doubts about the Court's impartiality.

## V.

In sum, Defendants' Motion for Summary Judgment [doc. #179] is **GRANTED**. Ms. Fuller's Motion for Temporary Restraining Order and Preliminary Injunction [doc. # 206] and Motion for Disqualification of Judicial Authority [doc. # 210] are **DENIED**.  **The Clerk is directed to enter judgment in favor of Defendants and to close this case.**


IT IS SO ORDERED.


 /s/ Mark R. Kravitz_____
United States District Judge


**Dated at New Haven, Connecticut: August 6, 2012.**